IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| The NOCO Company, | Case No. 1:20-cv-1960 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| Shenzhen Xinzexing E-Commerce Co., Ltd., | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Currently pending is Plaintiff The NOCO Company's ("Plaintiff" or "NOCO") Motion for Leave to Serve Defendant Shenzhen Xinzexing E-Commerce Co., Ltd. d/b/a NEXPOW ("Defendant" or "NEXPOW") by Alternate Means ("NOCO's Motion"). (Doc. No. 23.) For the following reasons, Plaintiff's Motion is GRANTED.

I. **Background**

On September 1, 2020, Plaintiff filed a Complaint in this Court alleging five counts: (1) Declaratory Judgment/Injunctive Relief (Count One); (2) Trademark Infringement (Count Two); (3) Trademark Dilution (Count Three); (4) Ohio Deceptive Trade Practices violation (Count Four); and (5) Unfair Competition (Count Five). (Doc. No. 1.) According to the Complaint, NOCO is an Ohio corporation that designs, manufactures, and sells battery chargers, portable power devices, and battery products and accessories. (*Id.* at ¶ 2.) The Complaint alleges that NEXPOW is a limited liability company in China that is selling products in the United States using NOCO's proprietary intellectual property without the authority or consent of NOCO. (*Id.* at ¶¶ 3-4.)

NOCO has been aware of NEXPOW's usage of NOCO's intellectual property since at least July 11, 2020. (Doc. No. 23-1, ¶ 5.) NEXPOW was promoting competing products using

Amazon.com, through the Amazon storefront NEXPOWER-US, through its own website NEXPOW.com, and possibly through other websites as well. (*Id.* at ¶ 6.) When NOCO discovered NEXPOW's infringement, NEXPOW's Amazon username was the only identifying information available to NOCO. (*Id.* at ¶7.)

After Plaintiff filed its Complaint, it attempted to serve the summons and Complaint by registered mail to an address found on the United States Patent and Trademark Office's ("USPTO") Trademark Electronic Search System for Defendant (the "First Address"). (*Id.* at ¶ 9.) The United States Postal Service tracking indicated that the summons and Complaint were delivered on October 3, 2020, but the executed return card was not returned to the Clerk of Court's office for reasons unknown. (*Id.* at ¶ 10.)

Plaintiff then conducted an exhaustive search for mailing and email addresses associated with Defendant, including searches of the USPTO, Defendant's website NEXPOW.com, and Amazon.com. (*Id.* at ¶ 11.) Plaintiff discovered that Defendant is the current owner of two NEXPOW trademarks, both of which were issued at the First Address. (*Id.* at ¶ 12.) The USPTO filings for the first trademark also listed the name, two emails (glingting@outlook.com and xxlsr@outlook.com), and two mailing addresses (the First Address and an additional mailing address in China (the "Second Address")) of Defendant's principal, Wu QieQie. (*Id.* at ¶¶ 13-15.) The USPTO filings for the second trademark listed an entity known as "Shenzhen Hengyong Innovation Technology" (the "Entity") as the filer of the original application. (*Id.* at ¶ 16.) The USPTO filings further named Zia Maozhi as the listed president of the Entity and contained an email (ustm@tezhil.com) and mailing address in China for Maozhi. (*Id.* at ¶¶ 17-18.) Defendant also applied for a third trademark, which was filed on Defendant's behalf by Attorney Jonathan G. Morton

2

("Attorney Morton") and Attorney Shiyong Ye ("Attorney Ye").  (*Id.* at ¶ 19.)  Further, Plaintiff discovered that Defendant's website NEXPOW.com provided a contact email address of support@nexpow.com, and that Defendant's Amazon storefront, NEXPOWER-US, included a mailing address.  (*Id.* at ¶¶ 20-21.)

On February 11, 2021, Plaintiff sent a request to waive service to Defendant, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, via Federal Express and electronic mail to all of the foregoing addresses and email addresses, along with Attorney Morton and Attorney Ye's listed addresses and email addresses (jmlawaotumanip@gmail.com for Attorney Morton and syetm@reidwise.com and USTKAPP@outlook.com for Attorney Ye) with the USPTO.  (*Id.* at ¶ 22; Doc. No. 23 at 6.)  All of the waiver packets that were sent via Federal Express were delivered, except for the waiver packet sent to the Second Address. (Doc. No. 23-1, ¶ 23.)  None of the emails bounced back nor was Plaintiff notified that any of the emails had been rejected or undelivered.  (*Id.* at ¶ 24.)  Defendant did not respond to Plaintiff's request to waive service.  (*Id.* at ¶ 25.)  The only response Plaintiff received was from Attorney Ye, who advised Plaintiff that he did not represent Defendant with regard to the "NEXPOW" trademark.  (*Id.* at ¶ 26.)

Then, in or around April 2021, Plaintiff discovered an American company incorporated in California called "Nexpow Inc." that had a California address.  (*Id.* at ¶ 27.)  At the time, it was Plaintiff's good faith belief that Nexpow Inc. was a subsidiary of Defendant.  (*Id.* at ¶ 28.)  Plaintiff hired a California-based process server and attempted to effect service on Nexpow Inc. in accordance with California law at its California address, however, Plaintiff's attempts were unsuccessful and Nexpow Inc.'s address was reported as abandoned.  (*Id.* at ¶ 29.)

3

Then, in or around June 2021, Plaintiff began its efforts to effect service upon Defendant through the procedures outlined in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"). (*Id.* at ¶ 30.) Plaintiff hired Veritext Legal Solutions ("Veritext"), a business specializing in legal support services, to assist Plaintiff in effecting service under the Hague Convention. (*Id.* at ¶ 31.) On July 7, 2021, Veritext informed Plaintiff that it had located a registered address for Defendant. (*Id.* at ¶ 32.) On August 30, 2021, Veritext informed Plaintiff that the relevant service documents had been translated to Chinese and were scheduled to be mailed oversees on August 31, 2021. (*Id.* at ¶ 33.) Veritext informed Plaintiff that it would likely take six to nine months to complete service. (*Id.* at ¶ 34.) On July 8, 2022, Veritext notified Plaintiff that it received a "Notice of Non-Service" in connection with Defendant. (*Id.* at ¶ 36; *see also* Doc. No. 23-2.) This Notice of Non-Service contains the "Request for Service Abroad of Judicial or Extrajudicial Documents" which is addressed to the Hague Central Authorities for the People's Republic of China at the Ministry of Justice of China. (Doc. No. 23-2.) The "Certificate" portion of the Notice of Non-Service states that the document has not been served because "[t]he recipient could not be reached." (*Id.*) According to Plaintiff, it has now "attempted to contact Defendant at each and every point of contact and address that Defendant represents to the public." (Doc. No. 23-1, ¶ 37.)

On August 26, 2022, Plaintiff filed the instant Motion seeking leave pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure to serve Defendant by email at certain email addresses which it represents to the public as its own. (Doc. No. 23.) As this Defendant has not been served, no opposition has been filed.

## II. Legal Standard

4

As the Sixth Circuit has noted, the requirement of proper service of process "is not some mindless technicality." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)); *see also Fed. Trade Comm'n v. Repair All PC, LLC*, 2017 WL 2362946, at *2 (N.D. Ohio May 31, 2017). Rather, "service of a summons and complaint 'must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over a defendant.'" *Repair All PC*, 2017 WL 2362946, at *2 (quoting *Studio A Entm't, Inc. v. Active Distribs., Inc.*, 2008 WL 162785, at *2 (N.D. Ohio Jan. 15, 2008)).

Federal Rule of Civil Procedure 4(h) governs international service of process on foreign businesses. Specifically, this Rule authorizes service of process on a foreign business in the same "manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides, in relevant part, as follows:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> \*\*\*
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Here, the United States and China are both signatories to the Hague Convention, as referenced in Rule 4(f)(1). *See NOCO Co. v. Liu Chang*, 2019 WL 2135665, at *2 (N.D. Ohio May 16, 2019).[1] "The Hague Convention is a multilateral treaty that was designed to supply a simple way to serve

---

[1] *See also* the Hague Conference website located at https://www hcch.net.

5

process abroad, assure that foreign defendants receive actual and timely notice of suit, and facilitate proof of service." *Id.*; *see also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988); *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1507 (2017). The Hague Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. As the Supreme Court has noted, "[t]his language is mandatory," and compliance with the Hague Convention is required "in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id*. at 698. The central authority must attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that service was successful or listing the reasons that prevented service. *See* Hague Convention, Art. 2-7. The Hague Convention also permits certain alternative methods of service (including through postal channels) unless the receiving country objects. China has objected to most of these alternative methods of service, including service by postal channels. *See Liu Chang*, 2019 WL 2135665, at *2; *see also China – Central Authority & Practical Information*, HAGUE CONFERENCE ON PRIVATE INT'L LAW, https://www.hcch.net/en/states/authorities/details3/?aid=243. As a result, for service in China, the Hague Convention primarily authorizes service through China's central authority (i.e., the Ministry of Justice) that arranges for service according to domestic law. *Liu Chang*, 2019 WL 2135665, at *2.

As to Rule 4(f)(3), courts agree that service under that Rule must be (1) directed by the court; and (2) not prohibited by international agreement. *See e.g.*, *Lexmark Int'l, Inc. v. Ink Techs. Printer

6

*Supplies, Inc.*, 295 F.R.D. 259 (S.D. Ohio 2013); *Repair All PC*, 2017 WL 2362946, at *3. Courts have further found that, before service may be authorized under that Rule, parties may be required to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *NOCO Co. v. Shenzhen Anband Tech.*, 2018 WL 1373822, at *2 (N.D. Ohio Mar. 19, 2018) (quoting *Midmark Corp. v Janak Healthcare Private Ltd.*, 2014 WL 1764704, at *1 (S.D. Ohio May 1, 2014)); *see also Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 306 (W.D. Ky. 2017); *Repair All PC*, 2017 WL 2362946, at *3; *Ahkeo Labs LLC v. Plurimi Inv. Managers, LLP*, 2017 WL 2793918, at *2 (N.D. Ohio June 26, 2017).

Lastly, the Court must ensure that alternative means of service under Rule 4(f)(3) "comport with constitutional notions of due process, namely that the service of process be 'reasonably calculated, under all the circumstances, to apprize [sic] interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lexmark Int'l*, 291 F.R.D. at 174 (quoting *Studio A Entm't, Inc.*, 2008 WL 162785, at *2); *see also Aerodyn Eng'g, LLC v. Fidia Co.*, 2020 WL 3000509, at *1 (E.D. Mich. June 4, 2020); *Repair All PC*, 2017 WL 2362946, at *2.

Rulings on alternative service under Rule 4(f)(3) are discretionary. *See Shenzhen Anband Tech.*, 2018 WL 1373822, at *2. As one district court noted, "Rule 4(f)(3) empowers the court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case." *Repair All PC*, 2017 WL 2362946, at *3.

**III.  Analysis**

In the instant case, NOCO seeks leave to serve Defendant via email at certain email addresses which it represents to the public as its own through both its website NEXPOW.com (support@nexpow.com), as well as filings before the USPTO (glingting@outlook.com, xxlsr@outlook.com, ustm@tezhil.com, and jmlawaotumanip@gmail.com). In its Motion, NOCO asserts that it has attempted to serve Defendant pursuant to the Hague Convention; i.e., by transmitting the appropriate service documents to China's Central Authority for service according to domestic law, but such attempt has proved unsuccessful. (Doc. No. 23 at 7-8.) In its Motion, NOCO argues that alternative service should now be permitted under Rule 4(f)(3) because it has made a good faith effort to serve Defendant at each and every contact point and address that Defendant represents to the public, but to no avail. (*Id.* at 10.) NOCO also argues that service through email is reasonably calculated to give notice to Defendant of the litigation and, therefore, comports with due process. (*Id*. at 8-11.)

For the following reasons, the Court grants NOCO's request to serve Defendant via the certain email addresses which Defendant represents to the public as its own through its website and its filings with the USPTO. First, in accordance with Rule 4(f)(1) of the Federal Rules of Civil Procedure, the Court finds that NOCO has properly attempted to effect service under the Hague Convention. (*See id.* at 7-8.) Despite NOCO's attempt, the request to the Hague Central Authority for the People's Republic of China was returned not served because "[t]he recipient could not be reached." (Doc. No. 23-2.)

The Court further finds that, under the circumstances presented, service on Defendant via email is appropriate and reasonably calculated to apprise Defendant of the instant lawsuit. As an initial matter, the Court finds that NOCO reasonably attempted to effectuate service by sending the

8

summons and complaint by registered mail to the physical address provided by Defendant on its trademarks with the USPTO. (*See* Doc. No. 23 at 4.) NOCO also hired a California process server and attempted to effect service on an entity believed to be a subsidiary of Defendant. (*Id.* at 6.) NOCO further sent requests to waive service via Federal Express to five physical mailing addresses and via email to six email addresses associated with Defendant's trademarks with the USPTO. (*Id.* at 4-6.) NOCO also sent requests to waive service via Federal Express to the address listed on Defendant's Amazon storefront and via email to the email address listed on Defendant's website. (*Id.* at 7.) The Court determines that NOCO has made a good faith effort to serve Defendant.

The Court further finds that service through electronic channels such as email is not prohibited by the Hague Convention. *See, e.g.*, *NOCO Co. v. Shenzen Dika Na'er E-Commerce Co.*, 2017 WL 11540638, at *3 (N.D. Ohio Nov. 22, 2017) (noting that "federal courts have repeatedly found that email service is not prohibited by the Hague Convention"); *Shenzhen Anband Tech.*, 2018 WL 1373822 at *3 (same); *Lexmark Int'l*, 295 F.R.D. at 261 (same). This is the case even where a signatory country has objected to the alternative methods of service in Article 10, as China has. *See Lexmark Int'l*, 295 F.R.D. at 262; *NOCO Co. v. Khaustov*, 2019 WL 4218637, at *3 (N.D. Ohio Sept. 5, 2019) ("[F]ederal courts have found that '[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as email or publication.'") (quoting *Adidas AG v. Adidas.style*, 2018 WL 1801197, at *1 (S.D. Fla. Feb. 7, 2018)).

Finally, NOCO has provided sufficient information from which the Court can determine that the requested alternative service via email is reasonably calculated to reach Defendant. Specifically, NOCO alleges that none of the email addresses to which NOCO sent requests to waive service

"bounced back nor indicated in any way that the message was rejected or not delivered." (Doc. No. 23-1, ¶ 24.)  The only response NOCO did receive was from Attorney Ye, who advised that he did not represent Defendant with regard to the "NEXPOW" trademark (*id.* at ¶ 26), but NOCO does not seek leave to serve Defendant via an email to Attorney Ye here (*see* Doc. No. 23 at 1).

Courts have authorized electronic service under similar circumstances, particularly where a defendant's business takes place online.  As one district court explained:

> Serving Defendants by e-mail not only meets constitutional standards, but also is the method of service most likely to reach Defendants.  Defendants have organized their online business so that the only way customers can contact them to place an order or lodge an inquiry is by e-mail.  Although every physical address listed by Defendants proved to be fraudulent upon investigation, every e-mail account listed was active.  This is hardly surprising.  Any e-commerce merchant depends on electronic communication, and in particular e-mail, for his livelihood.  *See* Alexandra Jacobs, *Happy Feet: Inside the Online Shopping Utopia*, THE NEW YORKER, Sept. 14, 2009, at 67 (noting that most web merchants "seem to be operated by spectral forces rather than human beings" because they handle customer service solely by e-mail).  Even "e-business scofflaw[s]," *Rio Props*., 284 F.3d at 1018, must maintain valid e-mail accounts and check them regularly to receive new orders and provide customers with receipts and shipping information.

*Chanel, Inc. v. Song Xu*, 2010 WL 396357, at *4 (W.D. Tenn. Jan. 27, 2010); s*ee also Aerodyn*, 2020 WL 3000509, at *2 ("Plaintiff is also correct in asserting that service via email comports with principles of due process where the serving party has shown, as Plaintiff has done here, that the party being served does business online and the identified emails are valid.").

In light of NOCO's good faith efforts to service Defendant via both physical and electronic means, the Court grants NOCO's Motion and orders NOCO to serve Defendant via email at support@nexpow.com, glingting@outlook.com, xxlsr@outlook.com, ustm@tezhil.com, and jmlawaotumanip@gmail.com within fourteen (14) days of the date of this Order.  NOCO shall comply with Rule 4 of the Federal Rules of Civil Procedure by providing proof of service once service

is completed by the above approved means. Should Defendant enter a formal appearance, service shall revert to standard processes.

IV. **Conclusion**

For all the reasons set forth above, Plaintiff's Motion for Leave to Serve by Alternate Means (Doc. No. 23) is GRANTED.

**IT IS SO ORDERED.**

Date: September 16, 2022

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE