IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE NOCO COMPANY, | CASE NO. 1:20-CV-01960-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| SHENZHEN XINZEXIING E-COMMERCE CO., LTD, D/B/A NEXPOW., | MEMORANDUM OF OPINION AND ORDER |
| Defendant. | |

This matter comes before the Court upon the Motion to Set Aside Entry of Default and For Leave to Respond to Complaint *Instanter* filed by Defendant Shenzhen Xinzexiing E-Commerce Co., Ltd, d/b/a NEXPOW, on December 16, 2022. (Doc. No. 33.)  Plaintiff NOCO Company filed a Brief in Opposition to NEXPOW's Motion on January 30, 2023. (Doc. No. 38.)  NEXPOW did not file a reply.  For the following reasons, NEXPOW's Motion is GRANTED.

**I.      Background**

On September 1, 2020, Plaintiff filed a Complaint in this Court alleging five counts: (1) Declaratory Judgment/Injunctive Relief; (2) Trademark Infringement; (3) Trademark Dilution; (4) Ohio Deceptive Trade Practices violation; and (5) Unfair Competition. (Doc. No. 1.)  According to the Complaint, NOCO is an Ohio corporation that designs, manufactures, and sells battery chargers, portable power devices, and battery products and accessories. (Id. at ¶ 2.)  The Complaint alleges that NEXPOW is a limited liability company in China that is selling products in the United States using NOCO's proprietary intellectual property without the authority or consent of NOCO. (Id. at ¶¶

3-4.) Specifically, NOCO alleges that NEXPOW has used portions of NOCO's "JUMP START" trademark to market NEXPOW's own products on Amazon.com and elsewhere. (*Id.* at ¶¶ 14-33.)

After NOCO filed its Complaint, it attempted to serve the summons and Complaint by registered mail to an address found on the United State Patent and Trademark Office's Trademark Electronic Search System for NEXPOW. Though the United States Postal Service tracking indicated that the summons and Complaint were delivered to the address listed in the USPTO's records on October 3, 2020, the executed return card was never returned to the Clerk of Court's office for unknown reasons. (*See* Memorandum Opinion and Order, Doc. No. 24, PageID# 148.) NOCO then conducted an exhaustive search for accurate contact information for NEXPOW. (*Id.*) On February 11, 2021, NOCO sent NEXPOW requests to waive service, pursuant to Fed. R. Civ. P. 4(d), via Federal Express and electronic mail to multiple addresses and e-mail addresses that NOCO believed to be associated with NEXPOW. (*Id.*) All but one of the waiver packets sent via Federal Express were delivered. (*Id.*) None of the e-mails bounced back, nor was NOCO notified that any of the e-mails were rejected or undeliverable. (*Id.*) NEXPOW did not respond to NOCO's request to waive service. (*Id.*)

In June 2021, NOCO began its efforts to effect service upon NEXPOW via the procedures outlined in the Hague Convention. (*Id.* at PageID# 150.) NOCO hired Veritext Legal Solutions to assist in its efforts. (*Id.*) On August 31, 2021, Veritext notified NOCO that the relevant service documents had been translated into Chinese and would be mailed overseas, but that the service process would likely take six to nine months to complete. (*Id.*) On July 8, 2022, Veritext notified NOCO that it received a "Notice of Non-Service" in connection with NEXPOW and that NEXPOW could not be reached. (*Id.*)

On August 26, 2022, NOCO sought leave pursuant to Fed. R. Civ. P. 4(f)(3) to serve NEXPOW via alternative means, namely by e-mail at certain e-mail addresses represented to the public as NEXPOW's own. (*Id.*) On September 16, 2022, the Court granted NOCO leave to serve NEXPOW via e-mail at the following e-mail addresses: support@nexpow.com, glingting@outlook.com, xxlsr@outlook.com, ustm@tezhil.com, and jmlawaotumanip@gmail.com. On September 29, 2022, NOCO filed Notice of Service of Alias Summons and Complaint on NEXPOW via the five e-mail addresses identified above. (Doc. No. 27.)

NEXPOW did not answer NOCO's Complaint within 21 days. On October 27, 2022, NOCO applied to the Clerk for entry of default against NEXPOW. (Doc. No. 28.) On November 1, 2022, the Clerk properly entered default against NEXPOW. (Doc. No. 29.)

According to NEXPOW, it first learned of this lawsuit from an Amazon.com representative on November 18, 2022. (Doc. No. 33, PageID# 215.) On November 29, 2022, an attorney entered an appearance on behalf of NEXPOW. (Doc. No. 31.) NEXPOW's attorney attempted to file NEXPOW's answer at that time, but because the Clerk already entered default against NEXPOW, the Court struck NEXPOW's purported answer. (ECF Order 11/30/2022.) The Court indicated that NEXPOW "must move to set aside the entry of default in accordance with Fed. R. Civ. P. 55(c) if it seeks to answer the Complaint." (*Id.*)

On December 16, 2022, NEXPOW filed the instant Motion to set aside the entry of default and for leave to file its Answer *instanter*. (Doc. No. 33.) On January 30, 2023, NOCO filed a Brief in Opposition. (Doc. No. 38.) NEXPOW did not reply. NEXPOW's Motion is now ripe.

3

## II. Legal Framework

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause." In order to determine whether a party has shown "good cause" for the purposes of setting aside an entry of default, the court considers the following factors: (1) whether the plaintiff will suffer prejudice, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default. *See Waifersong, Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983); 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2692, 2694 (1983)).

Fed. R. Civ. P. 55(c) leaves the decision to set aside the entry of default to the discretion of the trial judge. *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986). However, "trials on the merits are favored in federal courts because they serve the best interests of justice, so 'any doubt should be resolved in favor of the petition to set aside the judgment.'" *Unger v. Ohio Flame, LLC*, No. 1:13-cv-854, 2013 WL 12121504, at *2 (W.D. Mich. Nov. 26, 2013) (quoting *United Coin*, 705 F.2d at 846).

## III. Analysis

NEXPOW filed its Motion after entry of default, but before a default judgment was entered. Therefore, this Court applies the "good cause" standard found in Fed. R. Civ. P. 55(c), rather than the more demanding standard under Fed. R. Civ. P. 60(b). To demonstrate good cause, NEXPOW must show that NOCO will not suffer prejudice by setting aside the default, that NEXPOW's defenses are meritorious, and that NEXPOW's conduct was not culpable. *See United Coin*, 705 F.2d at 845.

### A. Prejudice

When determining if the plaintiff will be prejudiced by the court vacating an entry of default, delay alone is not prejudice. *United Coin*, 705 F.2d at 845; *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990). Instead, the plaintiff must demonstrate that delay will cause "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Berthelsen*, 907 F.2d at 621.

NEXPOW argues that setting aside the default will not prejudice NOCO because the evidence related to NOCO's claims is nearly entirely electronic and easily preserved, and because the case is in its early stages. (Doc. No. 33, PageID# 211.) Moreover, NEXPOW argues that its delay in seeking to answer NOCO's Complaint was "just over a month," whereas NOCO spent nearly two years attempting to perfect service. (*Id.* at PageID# 212.) NOCO argues that the delay is prejudicial because it would allow NEXPOW to put off the issuance of an injunction and "buy[s] time to sell off its inventory of products marketed through infringement of NOCO's registered trademark, causing continued consumer confusion, hurting NOCO's brand, and potentially limiting the availability of evidence." (Doc. No. 38, PageID# 242.) NOCO argues that the two-year delay in serving NEXPOW was caused by NEXPOW's "evasion of [NOCO's] efforts to contact and serve" NEXPOW. (*Id.*)

The Court concludes that this factor weighs in favor of setting aside the default. First, NOCO does not demonstrate that setting aside default will lead to a loss of evidence or increased difficulties in discovery. NEXPOW engaged in its allegedly infringing conduct, i.e., marketing its products by infringing on NOCO's trademarks, online through electronic means. (*See* Doc. No. 1.) Presumably, evidence of such conduct remains electronically accessible, and NOCO does not demonstrate otherwise. Second, the case is in its early stages, as NOCO only just achieved service on NEXPOW

5

on September 29, 2022, and discovery has not yet begun. Third, though NOCO speculates that NEXPOW will have additional time to sell off its remaining inventory via allegedly infringing conduct, NOCO remains free to seek injunctive relief after the default is set aside. Finally, though NOCO asserts that NEXPOW intentionally "evaded" service in this matter, there is no evidence that NEXPOW did so. Accordingly, the Court concludes this factor weighs in favor of setting aside the default.

### B. Meritorious Defenses

Next, the Court must consider whether the defendant's defenses are meritorious. When determining whether a defense is "meritorious," the Court does not look at the defense's likelihood of success, but rather "whether the defense is one recognized by the law, taking all facts in the light most favorable to the defendant." *Unger*, 2013 WL 12121504, at *2 (citing *Berthelsen*, 907 F.2d at 621-22). "[I]f any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *Union Coin*, 705 F.2d at 845.

NEXPOW maintains that its use of portions of NOCO's JUMP START trademark constituted "fair use" under federal trademark law because NEXPOW used generic phrasing (e.g., "jump start a car battery in seconds") that described the reality of NEXPOW's products' capabilities and instructed users on their function. (Doc. No. 33, PageID# 212.) NOCO argues that NEXPOW's use of NOCO's trademark was not fair use under federal trademark law. (Doc. No. 38, PageID# 242-43.) NOCO asserts that because its trademark is registered with the United States Patent and Trademark Office, its trademark is either "inherently distinctive" or "descriptive with secondary meaning," and therefore protectable under federal trademark law. (*Id.*) NOCO asserts that NEXPOW did not suggest "that it will be able to rebut the presumption of validity by undercutting the presumed secondary meaning of

6

NOCO's trademark as associated with its battery accessories," but claims without support that NOCO's registered trademark is generic. (*Id.* at PageID# 244.)

The Court concludes that NEXPOW pled a sufficiently meritorious defense. NOCO's affirmative fair use defense, if true, would defeat NOCO's state and federal trademark claims.[1] The "fair use" defense permits a party's use, "otherwise than as a mark," of a term "which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4). As the Sixth Circuit has explained,

> Under the doctrine of "fair use," **the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense.**
>
> > The only right of exclusion that trademark law creates in a descriptive word is in the secondary, new, "trademark" meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition.
>
> *McCarthy, supra* n. 2, at § 11:45. Courts have recognized that a defendant found liable for trademark violations still retains a right "to identify the product it has copied, so long as no misrepresentation is made and no confusion is generated as to the source, sponsorship, or identify of the eratsz goods." *Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 700 (1st Cir. 1987); *see also Pebble Beach Co. v. Tour 18 I Limited*, 155 F.3d 526, 545 (5th Cir. 1998).

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001) (emphasis added). "In evaluating a defendant's fair use defense, a court must consider whether defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp.*, 332 F.3d at 920 (citing *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 724 (S.D. Ohio 2002)).

---

[1] Trademark claims under Ohio law follow the same analysis as federal trademark claims asserted under the Lanham Act. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).

Here, NEXPOW need not attack the validity of NOCO's trademark's presumed secondary meaning to assert a fair use defense. Instead, NEXPOW must demonstrate that it used the term(s) found in NOCO's mark only to describe NEXPOW's own product, and that NEXPOW did so in good faith. *Herman Miller*, 270 F.3d at 319. NEXPOW claims its description that its products can jump start a dead battery in seconds is fair and in good faith. If true, such a defense defeats NOCO's claims. Accordingly, the Court concludes that NEXPOW has asserted a meritorious defense.

### C. Culpable Conduct

Finally, the Court asks whether the culpable conduct of the defendant led to the default. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard*, 796 F.2d at 193. "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 327 (6th Cir. 2010). Setting aside the default is appropriate when the delay was not lengthy and when there is no pattern of disregard for the Court or its rules. *Shepard*, 796 F.2d at 194. Additionally, "where the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Id.* at 195.

NEXPOW maintains that its "less-than-two-month delay" in defending this action "resulted from honest oversight stemming from the complex service circumstances and chronology," and not from culpable conduct. (Doc. No. 33, PageID# 215.) NEXPOW claims that it is a Chinese company that does not maintain operations or any agents in the United States, and that it was unaware of NOCO's Complaint until Amazon notified it of the lawsuit on November 18, 2022. (*Id.*) NEXPOW

8

claims that it immediately reached out to NOCO's counsel but received no response. (*Id.*) Ten days later, NEXPOW's counsel entered a notice of appearance and attempted to file an answer to NOCO's Complaint. (*Id.*) Moreover, NEXPOW claims in a footnote that NOCO's waiver packages, which it sent via e-mail to certain public-facing NEXPOW e-mail addresses, were not undeliverable but nevertheless "did not reach and/or actually apprise those at NEXPOW with authority regarding this action of its pendency." (*Id.* at PageID# 209.)

NOCO argues that NEXPOW's conduct was culpable because NEXPOW had notice of the litigation after NOCO e-mailed its waiver packets to NEXPOW. (Doc. No. 38, PageID# 239-40.) Moreover, NOCO argues that NEXPOW "failed to make any proper response to effective service of process for 78 days" after service in September 2022. (*Id.* at PageID# 240.) NOCO asserts that NEXPOW's "flimsy explanation for its failure to respond to prior notice of the lawsuit simply does not excuse [NEXPOW's] knowing and willful disregard for, and steadfast unwillingness to participate in, the legal process following proper service." (*Id.*) NOCO argues that this is "the kind of culpable conduct courts consider when upholding an entry of default." (*Id.*)

The Court concludes this factor weighs in favor of setting aside the default. Although NEXPOW's explanation for its failure to respond to NOCO's e-mails regarding waiver of service is "flimsy," and may even demonstrate that NEXPOW's methods for routing e-mails to the appropriate recipient are unreasonable, NEXPOW's conduct does not rise to the level of culpability in NOCO's cited cases, *Assurity Life Ins. Co. v. Estate of Chapman* and *Adams v. Sunlighten, Inc.* In *Assurity*, the defendants' attorney worked with the plaintiff's counsel to resolve the relevant dispute for nearly six months before the plaintiff eventually filed its complaint. *Assurity Life Ins. Co. v. Estate of Chapman*, No: 2:16-cv-02196-STA-dkv, 2016 WL 6242035, at *2 (W.D. Tenn. Oct. 25, 2016).

Despite the defendants' knowledge of the litigation, the defendants' attorney failed to enter a notice of appearance until after the court requested a status report, issued a show cause order, and entered default against the defendants. *Id.* The court concluded that the defendants' refusal to participate in formal court proceedings until after entry of default demonstrated a reckless disregard for the effect of their actions on the pendency of judicial proceedings. *Id.*

In *Adams*, the parties were engaged in settlement negotiations for a year prior to the plaintiffs filing their complaint. *Adams v. Sunlighten Inc.*, 328 F.R.D. 477, 483 (W.D. Mich. 2018). After the plaintiffs filed their complaint, the plaintiffs' attorney twice e-mailed the defendant's attorney, attempting to request waiver of service. *Id.* The plaintiffs' process server also called the defendant directly to arrange for service of process. *Id.* The court concluded that the defendant could hardly claim to be unaware of the litigation and that the defendant's conduct in refusing to appear or answer the complaint "constitutes at least a reckless disregard for its effect on the judicial proceedings . . . ." *Id.*

NEXPOW's conduct does not rise to the level of recklessness described in *Assurity* and *Adams*. NEXPOW maintains that NOCO's February 2021 e-mails went undelivered to the correct employees, and that it only learned of the lawsuit on November 18, 2022—not September 29, 2022, when NOCO served NEXPOW by e-mail. (Doc. No. 33, PageID# 209, 214.) Though this may be unreasonable, there is no basis in the record to find that NEXPOW intentionally or recklessly engaged in a pattern of disregard for the Court or its rules. *See, e.g., $22,050.00 in Currency*, 595 F.3d at 327 (concluding the defendant had not engaged in culpable conduct even when the defendant's secretary received the notice of forfeiture and the defendant's own property had not been returned to him); *see also, e.g., Trustees of Plumbers and Steamfitters Local 184 Supp'l Pension Plan v. Above All Service*,

No. 5:18-cv-80-BJB, 2022 WL 571824, at *2 (concluding the defendant did not engage in culpable conduct when the defendant initially engaged in the litigation but then claimed its counsel withdrew without notice and the defendant never checked the status of the litigation until after default was entered).

Moreover, the delay between when NEXPOW allegedly learned of the existence of the litigation and when its counsel filed this Motion was not lengthy. NEXPOW's counsel entered a notice of appearance and attempted to answer NOCO's complaint on November 29, 2022, approximately 10 days after allegedly learning of this lawsuit from Amazon representatives on November 18, 2022. (Doc. No. 33, PageID# 209, 215.) NEXPOW moved to set aside the default 17 days later. (*Id.*) This is not a lengthy delay. *See Trustees of Plumbers and Steamfitters Local 184*, 2022 WL 571824, at *1-2 (defendant retained new counsel and moved to set aside the entry of default sixteen days after learning of the entry of default).

Accordingly, the Court concludes this factor weighs in favor of setting aside the default.

IV. **CONCLUSION**

For the reasons set forth above, NEXPOW's Motion to Set Aside Entry of Default and For Leave to Respond to Complaint *Instanter* (Doc. No. 33) is GRANTED. NEXPOW is directed to refile its proposed Answer (Doc. No. 33-2) as a separate document on the docket no later than March 1, 2023.

**IT IS SO ORDERED.**

Date: February 24, 2023

    s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE